Spencer, J.
(dissenting). I do not deem it necessary to discuss the character of the instrument which is the basis of this action, *368 as I hold that, whether the same shall be deemed a draft or commercial paper, or only a simple order, the evidence sustains the findings of the referee and the judgment. I also hold that, if the referee erred in denying the motion to dismiss the complaint, the evidence subsequent thereto fully supported his final conclusion. I hold this instrument to be an order or draft for money, made by one party upon and accepted by another (the defendant), the payment of which was contingent upon the latter (the acceptor) receiving funds from a claim which he (the acceptor) had in his hands for collection in behalf of and for the maker of said order. It appears to me that the language of the instrument itself, when read by the light of the evidence, clearly supports this view of the case, and that the report of the referee is based upon these conclusions. ■ The following is a copy of the order and its acceptance :
“ New York, February 14, 1868.
“ Mr. G. Carpenter, 13 Chambers street:
“ Please pay E. Richardson, Esq., or order, five hundred dollars, for value received, besides the amount stipulated to pay Mr. R., out of the proceeds of the claim against the Peabody estate now in yowr hands to collect, when the same shall have been collected by you.
“ Respectfully yours,
“ H. B. Melville.
[Indorsed on face:]
“ Accepted February 24, 1868.
“ Geo. Oabpenteb.”
The making, acceptance, and non-payment of the order are conceded facts from the pleadings, leaving the questions of consideration and of plaintiff being a bona fide purchaser contested and depending on the evidence; and as to the latter of these questions, I consider it fully established by the uncontradicted evidence of the plaintiff.
“I gave $500 for that paper. On the 14th of February, the date of the draft, I loaned Mr. Melville $150; some time after-wards he brought me this draft, and I gave him the balance, *369 $350, in money; I think this was in March; it was a few days after the acceptance of the draft.
“ Q. What was the consideration of the first advance of $150 ?
“A. The consideration was that Melville would bring me Carpenter’s acceptance for $500. Ho part of this draft has been paid to me.”
Upon the question of consideration for the acceptance, the following facts are uncontested: That on the 21st day of June, 1854, the plaintiff and John B. Palmer and John B. Wilson recovered judgment against Henry B. Melville, the maker of the draft or order, and David Melville (his brother), forming the firm of Melville & Co., in the Supreme Court of Hew York, for the sum of $2,809.68, which on the 24th day of August, 1866, they assigned to the defendant, in consideration of one dollar; and the agreement of defendant in regard to the collection of the same, which was in substance that he would pay to Palmer, Richardson & Co. one half of the net proceeds collected on said judgment, and in case of non-collection he was to reassign the judgment. That H. B. Melville first informed defendant of this judgment a short time previous to the assignment, and requested him to take the assignment and collect the same from the Peabody claim in Texas, as he (Melville) directed. The negotiation in relation to the assignment of the judgment between plaintiff and defendant, prior to actual assignment, was conducted by said Melville. Defendant, by the direction and information given him by Melville, sent this judgment to Texas, and took proceedings to attach the money due Melville & Co. from the Peabody estate. That in September, 1868, defendant collected and received on this judgment, from the proceeds of the claim against the Peabody estate in Texas, the net sum of $1,072.75.
The gross sum collected in Texas was $1,912.07, but the costs and expenses of the Texas lawyers had reduced the same to $1,070.75. After receiving that amount, the defendant deducted $22.75 as disbursements claimed by him to have been made in the matter, leaving as the net proceeds of the claim against the *370 Peabody estate in defendant’s hands (as ascertained and declared by him) the sum of $1,050, one half of which defendant paid to the plaintiff, on account of Palmer, Richardson & Co., in accordance with the agreement made by him with them when the judgment was assigned, leaving in his hands $517.75, or $525 after deducting the disbursements aforesaid of $22.75.
On the same day, September 19,1868, after this balance of over $500 from the collections made by the defendant from the Peabody estate had been thus ascertained and declared by him, this order or draft was presented by the plaintiff to the defendant and payment thereof demanded and refused. The order which he had accepted, directed him to pay the plaintiff or order, $500 “for value received, besides the amount stipulated to pay Mr. R. out of the proceeds of the claim against the Peabody estate now in your hands to collect, when the same shall heme been collected by you.”
Although-1 do not think that the question of a good consideration for the acceptance of this draft necessarily depends upon the evidence relating to or affecting the real ownership of this balance of the money so collected by defendant from the Peabody estate, nor that the plaintiff’s right of recovery should be affected by the condition of things or the existence of equities between Melville and defendant, yet I shall consider the evidence upon those points, holding that the conclusion of the referee can be fully supported by the same.
First.—It appears to me that the words of this acceptance, in their ordinary sense, together with the testimony of Melville and the defendant so far as they agree, establishes most conclusively that at the time of the making and acceptance of this order or draft both the defendant and Melville understood this matter alike,, and both recognized the fact that defendant was acting for Melville, in his interest, according to his directions, and as his attorney, in obtaining the assignment of the Richardson judgment„and in collecting a portion of the same from the claim against the Peabody estate in Texas.
They substantially agree in their respective statements as to *371 these facts: “That Melville gave defendant all his information in the premises in respect to the judgment; that he requested the defendant to take the assignment of the same, and he, Melville, negotiated the matter between defendant and Eichardson, and after the assignment he directed the defendant in the matter of the collection.”
The matter being thus under full headway, with prospects of success, and Melville wishing to realize therefrom, this order is made, accepted, and negotiated, and by the acceptance thereof I hold that defendant substantially declared therein to the plaintiff or any bona fide purchaser thereof that he accepted for value, and that the Peabody claim was in his hands for collection for Melville, and he should be held responsible for his written declaration at the time and upon which the plaintiff advanced his money.
Second.—In reviewing the conflicting statements of Melville and defendant in relation to the interest of Melville in this judgment and the amount to be collected thereon from the Peabody estate, and in relation to the same being in defendant’s hands for collection as the attorney of Melville, the testimony of the latter clearly sustains and is sustained by the language of the order. The following is a copy of his testimony:
“ H. B. Melville, called as a witness for plaintiff, being duly sworn, testified as follows: Have had dealings with defendant with reference to judgment of Palmer, Eichardson & Co. against Melville & Co.; I know that an assignment of that judgment was made to Carpenter by plaintiff in that suit; I requested Carpenter to collect that judgment; I was wholly instrumental in procuring the assignment of that judgment; Carpenter was acting for me, for my benefit, because I could not act myself; I had conversations with Mr. Carpenter on this subject, about the time of this assignment; I went to Mr. Carpenter.
“ Q. What were the conversations?
“ [Objected to. Objection overruled; defendant excepts.]
“ A. I called on defendant and told him that there was money collected by my brother in Texas belonging to the firm of *372 Melville & Co., and as I never had received one dollar out of my fortune that I put in with him, I had a means of collecting that money myself; that I could get a judgment of Melville & Co., on halves, that was the best I could, and if he would go and get the judgment from the records, send out to Texas, I would pay all expenses; he should collect the judgment, then take out his fees, or a reasonable fee for the work he did, hand over half to Palmer, Richardson & Co., and one half to me; as I could not act myself, he acted for me. He took the assignment of the judgment under tins arrangement; he agreed to that proposition. The assignment was not taken by me, because I was a party in interest in the affairs of Melville & Co.; I paid Mr. Carpenter money for disbursements, $25, which was $3 more than he said it was. This was a few days after the conversation about sending out the papers; this was before the assignment was made by Palmer, Richardson & Co.; it was about that time; it was all done in a day or two. I gave Mr. Carpenter the whole particulars of the amount which could be collected on paper, and have a copy of it; I got the information from Mr. Cummings, from Texas; I represented that it was $1,800 and some odd dollars, less expenses of his lawyers, etc.
“ Oross-examined. This conversation was in Mr. Carpenter’s office; no third person present; he told tiae the expenses would be about $22 for searching, obtaining judgment record, express and other expenses; I gave him the money in his office; no one present; took no receipt; Mr. Carpenter was at that time doing business for me, and had been for some time previously; I considered him at that time deeply in my debt; I had paid him fifty times for business he had done for me; I took Mr. Carpenter to Mr. Richardson’s office; I was not present when the judgment was assigned; I don’t know when it was assigned.
“ Q. Were you present when the agreement made by Carpenter to pay Richardson half the amount collected was executed %
“A. No, sir. It was executed nearly two years ago. The claim I have reference to was the money coming from the Pea *373 body estate. Hr. Cummings was the lawyer in Texas. Saw Hr. Carpenter twice about this before assignment was made; both times in his office; no one was present but myself and Hr. Carpenter. I don’t know Henry Stanford by name; there was a young man sitting at a desk in one corner of the defendant’s office, but I never knew his name.
“Re-direct. Never took a receipt from Hr. Carpenter for money paid him.”
The defendant had previously testified and given his version of the relations existing between him and Helville in regard to this claim, but was recalled and examined particularly in reference to the foregoing testimony of Helville. The following is a copy of his examination.
“ George Carpenter, defendant, recalled for defendant.
“ Q. Did Hr. Helville at any time say he would pay all expenses ; that you could collect the judgment, and take out your fee, or a reasonable fee, for the work you did?
“ A. No, sir.
“ Q. Did he say you could hand over one half to Palmer, Richardson & Co., and one half to him, or Enos Richardson ?
“A. No; nothing of the kind was ever said by him, or any one on his behalf.
“ Q. Did you ever agree to anything of the kind ?
“ A. I never did.
“ Q. Did Hi\ Helville ever give you $25 for disbursements in that matter ?
“ A. He never did.
“ Q. Did you ever tell him that the disbursements would be $22?
“ A. I never did.
“ Q. At this time was Hi’. Helville in your debt ?
“ A. He was, and always has been ever since I have known him.
“ Cross-examination:. Hr. Helville did not tell me that he wanted me to take the assignment of this judgment, because he could not take it himself.
*374 “ Q. What did he say %
“ A. He told me that Hr. Cummings had told him that he, Cummings, had collected a bill in favor of Melville & Co. against the Peabody estate in Texas, and that the money was then in the Probate Court, and he could probably attach it, if he did so before it was paid over by him, Cummings; Mr. Melville told me this, and told me he would see if he could get a judgment, and I might send down there and collect it; that I might as well have it as anybody else. He said nothing about his expecting to have anything out of it; he said nothing but what I have stated; said nothing about taking the assignment in his own name; never paid me any money in connection with this matter, except $10 for getting the judgment roll against Melville & Co.; he paid me that in my office; he paid nothing else in that case; I paid about $22; cannot tell the amount exactly; I kept no account with Melville, except in my register; did not carry out the amount of services. I carried through for Melville a divorce case; we did not succeed in the action; I' think he paid me twice $10 and $25 for John Graham; this was all. 1 did not tell him I would carry through the suit for $50. What he owed me was on account of various professional services. I got jewelry on account of services to the extent of five, six or seven hundred dollars, not more, during the last seven or eight years. The letters shown I think are all the letters I received from Texas about the judgment against the Peabody estate.”
There is a conflict of testimony between the defendant and Melville as to their relations in regard to this claim and it is the only conflicting testimony in the case I think.
Melville was supported by the general uncontested facts in the case, and his statement is consistent with the situation of the parties and with the language and meaning of the order, while the version of the defendant is not consistent with the reasonable consideration of those facts, and cannot be reconciled to the language of his acceptance, and if the referee considered the evinence beyond that afforded by the order and the admitted facts, and sought further evidence of the relations of the parties, at the *375 time of the acceptance, or of the ownership of the claim against the Peabody estate as between defendant and Melville, he certainly would have been justified in accepting and believing Melville’s testimony to the entire exclusion of that of defendant, and in such case to conclude that defendant was merely the attorney or collector of Melville in the premises, and that there was full consideration for the acceptance of the order or draft arising from those relations. The following is a copy of his findings.
“First.—That on the 14th day of February, 1868, H. B. Melville drew an order on the defendant, whereby he requested the, said defendant to pay the plaintiff herein the sum of five hundred dollars, as soon as and when funds should come into the possession of such defendant from the proceeds of the Peabody estate in Texas, sufficient to pay said order or draft; that on the 24th day of February, 1868, the said defendant accepted the said draft or order, and that the plaintiff herein thereafter became bona fide purchaser of the same, for a good and valuable consideration, and is now the lawful owner and possessor thereof.
“ Second.—That afterwards the defendant came into the possession of funds from the Peabody estate in Texas sufficient to pay the said draft, and that the date when he first became possessor of such funds was on or about the 19th day of September, 1868.
“ Third.—That the defendant has never paid the said draft so accepted as aforesaid.
“And I do further report, as conclusions of law upon the facts found:
“ That the defendant is indebted to the said plaintiff on the said draft, and that the plaintiff is entitled to recover against the said defendant the sum of five hundred dollars, with interest thereon from the 18th day of September, 1868, and amounting to the sum of five hundred and thirty-six dollars and ninety-four cents.”
If the rules of equity apply to this case, or equitable considerations can be urged in support of this judgment, there can be no doubt but that this acceptance must be construed upon its face to have been an equitable appropriation, or an assignment of this Peabody claim, joro tanto, for the payment of the acceptance, by *376 all the parties owning the same, or interested therein, or claiming to be such (Bradley v. Root et al., 5 Paige, 632; Morton v. Naylor, 1 Hill, 583; Vreeland v. Blunt, 6 Barb., 182).
But it is very clear that the defendant has no equities as against the plaintiff. The acceptance was made by the former with a full knowledge of the relations existing between himself and Melville in regard to this Peabody claim, and their respective interests therein, and the plaintiff paid his money in good faith for said acceptance, and in an equitable and moral view the judgment should be sustained. But I can see no necessity of invoking the aid of equity in the premises, nor can I z-ealize that the existence of equities, or the condition of matters between Melville and defendant, should affect the plaintiff’s right of recovery against the defendant on the order or draft, when it is clearly established and proved without contradiction that defendant had collected and received a sufficient amount from the Peabody claim to pay the same in accordance with the terms of the acceptance. I hold, as a matter of law, that defendant by accepting this order or draft substantially stated and committed himself to the plaintiff or to any other bona fide purchaser that he accepted the same for value received. That the claim or debt therein referred to was in his hands for collection, for or on account of Melville, and that this order should be paid therefrom when he had collected the same. I hold that, under these circumstances and upon the facts clearly established in this case, defendant is estopped from denying a consideration on his part for the acceptance, or from claiming or proving that he accepted without consideration, or that he did not have the claim against the Peabody estate for collection, but owned the same absolutely, etc.
1 hold that the only defense he could interpose and maintain as against the plaintiff (no fraud, etc., appears on the latter’s part), in the action upon this instrument, must be based upon the contingency or condition upon which he had accepted the same, as to whether, or not he had collected a sufficient amount from this Peabody claim to pay the same, after he had paid what he *377 had agreed to pay on the judgment. I hold that, upon the evidence in the case, the question of consideration was not a contested question of fact upon which the referee was bound to make and state a special finding, and that the findings of fact made by the referee are fully supported by the evidence in the case.
There is certainly no good reason of law or equity for the reversal of this judgment to be found in the evidence or the facts of the case, or that can be based thereon.
The report of the referee may not be as full on the facts, or rather in regard to the facts established in his mind, as it should have been, with a due regard to the form and substance of the same, and it is or may be defective in that respect, and possibly may not of itself sustain the conclusions of law. If the case on appeal was before the court upon the pleadings and report of the referee, and the exceptions without the evidence upon which the report was founded, I might not dissent from the judgment of the court on this appeal, but with my views of the case and the evidence before me, I can see no good reason nor find any decision of binding effect, that demands a reversal of this judgment upon the ground that the referee’s findings of fact are insufficient to support his conclusion of law, when I conclude from the uncontradicted evidence before me in the case that the facts established by such evidence are abundant and sufficient to support the conclusion of law reached by the referee.
I hold that under such circumstances an appellate court should consider the facts developed in the case by the evidence, as well as the findings or conclusions of fact stated by the referee, and if together they sustain the conclusions of law and the judgment, that the judgment should be affirmed.
I deem this error or defect in the report, if such there be, as formal and technical when appearing under these circumstances, and as not affecting a substantial right of any party to the action, and in accordance with section 176 of the Code an appellate court should disregard the same in the proceedings of an action, and that no judgment should be reversed or affected by reason of the same. For these reasons I am of the opinion that this judgment should be affirmed.